UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

DELIA J. BAEZ

CIVIL ACTION
NO. 05-10401-RCL

**OPPOSITION TO DEFENDANTS MOTION TO REMOVE DEFAULT**

This Court entered an entry of default against Defendant on August 16, 2005, after Defendant failed to respond to the Complaint, and Defendant now moves for Removal of Default, averring that counsel for Defendant failed to file a response to the Complaint due to "excusable neglect." Specifically, counsel avers that he was,

> on trial in the United States District Court in the District of Connecticut during May and June in a criminal case. I was unable to make time to respond to the complaint during those months. Since that time I have been on vacation and have been involved in other criminal litigation, . . .

Rule 55(c), Federal Rules of Civil Procedure, permits that the Court may set aside an entry of default "for good cause shown." Plaintiff submits that good cause has not been shown in this case and that Defendant's Motion should be denied.

Defendant filed no response to the government's allegations that she made numerous false claims for government benefits. The Complaint was served on Defendant on March 15, 2005. The government mailed a copy of the Complaint to counsel for Defendant on March 11, 2005. Moreover, the government sent a letter to counsel for

1

Defendant on November 15, 2004, setting forth its allegations regarding Defendant's false claims and the statutory penalties available. The letter requested that counsel for Defendant contact the government if "you believe that this office is mistaken in any regard and are interested in discussing these allegations." See Attachment. No response to the letter was made. Accordingly, Defendant filed her response in this Court more than 100 days after the response was due and more than five and a half months after the Complaint was served. Moreover, counsel for Defendant was aware of the allegations for more than nine months before he filed her Motion for Removal.

It appears from the docket of United States v. Jones et al, United States District Court for the District of Connecticut, 03: 99 cr 264, that counsel for Defendant was in a criminal trial in the District from May 9, 2005 to June 3, 2005. However, it is Plaintiff's view that that trial period left ample time for counsel for Defendant to file a timely response to the Complaint.

Moreover, Defendant seeks leave of the Court to file an Answer that is merely a list of denials to every allegation of the Complaint. The list of denials includes denials to factual information that is documented by documents within Defendant's possession or control, including denials regarding Defendant's ownership of real property documented by the registry of deeds and, as to denial of paragraphs thirteen and fourteen of the Complaint, denials of facts to which Defendant admitted in another proceeding in this Court. United States v. $62,552 in United States Currency, Civ. No. 03-10153 (Parties' Submission of Disputed and Undisputed Facts, November 5, 2004). Moreover, the

putative Answer asserts no affirmative defenses.

The government recognizes that the Court has liberal authority to "set aside an entry of default, . . . on a showing of reasonable justification." Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989).  The First Circuit has "not set forth any precise formula [for the analysis of "good cause" under Rule 55(c)], because we recognize that each case must necessarily turn on its own circumstances." Id. as cited in KPS & Associates, Inc. v. Designs by FMC, Inc., 318 F. 3d 1, 11 (1st Cir. 2003).  See Gen. Contracting & Trading Co. v. Interpole, Inc., 899 F. 2d 109, 112 (1st Cir. 1990) ("Rule 55(c) determinations are case-specific" . . . "must, therefore, be made in a practical, commonsense manner, without rigid adherence to, or undue reliance upon, a mechanical formula.").  Rule 55(c) is an expression of the traditional inherent equity power of the federal courts, and the First Circuit has identified,

> no fewer than seven factors a district court may consider: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; (7) the timing of the motion [to set aside entry of default."

KPS & Associates, Inc. v. Designs by FMC, Inc., 318 F. 3d at 11.  The flexibility is necessitated by the competing policies that underlie default; on the one hand, a remedy for obstructionism, to maintain orderly and efficient maintenance of justice and expeditious resolution of litigation, to promote finality and compliance with court rules; and, on the other hand, the value of deciding cases on the merits and avoiding unfair

results.  Id.[1]

In this case, the evidence set forth by counsel for Defendant does not, in the government's view, amount to "good cause."  First, the fact that counsel for Defendant was preoccupied with other matters during the period for timely response "has been tried before, and regularly has been found wanting."  De la Torre v. Continental Ins. Co., 15 F.3d 12, 14 -15 (1st Cir.1994) (ruling on Rule 55(b) motion).  See, e.g., Mendez v. Banco Popular de Puerto Rico, 900 F.2d 4, 7 (1st Cir.1990).  "Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences."  Pinero Schroeder v. FNMA, 574 F.2d 1117, 1118 (1st Cir.1978).   Second, the Answer that Defendant seeks to file now appears to be perfunctory and filed without deliberation.  It does not notify the Plaintiff regarding the substantive defenses, if any, that Defendant may raise.  See Sony Corp. v. Elm State Electronics, Inc., 800 F. 2d 317, 320, 21 (2d Cir. 1986) (general denials in an answer are enough to raise a meritorious defense  but "the moving party on a motion to reopen a default must support its general denials with some underlying facts" and conclusory denials were insufficient).

Accordingly, Defendant has not met her burden of showing good cause for her

---

[1] The First Circuit follows the ruling "that the acts or omissions of counsel are visited upon the client." U.S. v. One Lot of $25,721.00 in Currency, 938 F.2d 1417, 1422 (1st Cir. 1991); see  Link v. Wabash Railroad Co., 370 U.S. 626, 633-34 (1962). See Ojeda-Toro, 853 F.2d 25, 30 (1st Cir. 1988) (all parties are bound by the acts of their attorneys).  A client "must bear the onus of his lawyer's neglect."

failure to timely respond to the Complaint, and the government requests that this Court deny Defendant's Motion to Remove Default.

                                                        Respectfully Submitted,

                                                        MICHAEL J. SULLIVAN
                                                        United States Attorney

                                                        /S/ Anita Johnson
                                                        ANITA JOHNSON
                                                        Assistant U.S. Attorney
                                                         Moakley United States Courthouse
                                                        1 Courthouse Way - Suite 9200
                                                        Boston, MA 02210
                                                        (617) 748-3282

DATED:  September 13, 2005.



U.S. Department of Justice

*Michael J. Sullivan*
United States Attorney
District of Massachusetts

---

*Main Reception: (617) 748-3100*

John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

November 15, 2004

William Keefe, Esq.
390 Center Street
Jamaica Plain, MA 02130

        Re:  <u>Delia J. Baez</u>

Dear Mr. Keefe:

    This office has evidence that Delia J. Baez, your client, may have liability under the federal False Claims Act, 31 U.S.C. § 3729, for public housing rent benefits, monthly support payments, and food stamps, 2001 - 2004, that she applied for and received, when, in fact, she was ineligible for such benefits.

    The False Claims Act provides that:

Any person who -

1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; [or]

    2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government .. is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the government sustains because of the act of that person....

    (c) Claim defined. - For purposes of this section, "claim" includes any request or demand, . . . for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient

November 12, 2004
Page 2

    for any portion of the money or property which is requested or demanded....

    This office has evidence that Ms. Baez applied for rent subsidies for an apartment on the Boston Housing Authority premises at Franklin Field, 2001 through 2003, and that in connection with her application, she executed sworn statements of her income and assets that contained material false statements. Her applications for rent subsidies indicated that she had an income of $5000 - $10,000 annually, more or less, and that she had no assets.

    At the same time, Ms. Baez was the sole titleholder of property at 3381-83 Washington St., Jamaica Plain, Mass., that has an equitable value of $730,000, more or less (and, in addition, she holds a mortgage of $230,000 secured by this property). During the same period, Ms. Baez deposited checks and withdrew substantial amounts of cash and checks made out to herself, from her bank account. For example, during the period May 2002 to September 2002 alone, she deposited large checks into her checking account at Fleet Bank and withdrew $51,000, more or less. This financial activity is typical of the activity throughout her tenure at Franklin Fields.

    On August 13, 2002, Ms. Baez was carrying $62,552 in cash as she attempted to pass through U.S. Customs at Logan Airport to leave the country.

    At this time, it is estimated that she applied for and received more than $50,000 in rental subsidies for which she was unqualified.

    In addition to housing subsidies from the BHA, financed in part by the federal government, Ms. Baez applied for income subsidies during the same period and continuing to the present time, for which she represented under oath that she was without income and assets. As a result, she has received $24,981, more or less, in income and $9680, more or less, in food stamps, all financed by the federal government.

    In June 2004, while Ms. Baez continued to receive income support and food stamps, she purchased real property at 93 Cummins Highway, Roslindale, Mass., for $480,000. This property secures a mortgage note of $384,000, indicating that she paid approximately $100,000 in cash at the time she purchased the property.

November 12, 2004
Page 3


    Please contact this office by November 18, 2004, if you believe that this office is mistaken in any regard and are interested in discussing these allegations.

                Yours truly,

                /s/

                Anita Johnson
                Assistant U.S. Attorney
                (617)748-3282