UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL No.  05-10401-RCL |
| v. ) | |
| ) | |
| DELIA J. BAEZ, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56.1, Local Rules of this Court, the undisputed material facts are as follows:

**Baez' Claims For Income Assistance, Food Stamps and Medicaid**

1.  Baez filed applications to the Commonwealth of Massachusetts Department of Transitional Assistance, for food stamps and income assistance for low-income households, June 31, 2002, September 12, 2002, and October 7, 2002.  On fifteen occasions thereafter, from November 4, 2002 to March 2, 2004, Baez sent monthly certifications to the Department regarding her income and assets in order to establish her continuing eligibility.  Medical assistance is provided by the Department once eligibility for income assistance is approved.  Declaration of Special Agent Chris Robinson (hereafter Robinson Decl.) ¶ 5, attached as Exhibit 1 to this memorandum.

2.  Baez represented to the Department of Transitional Assistance, in her initial

application and her subsequent monthly certifications, that her household either had no income or had income of only $400 per month. Robinson Decl. ¶ 5.[1] Her statements disclosed no assets, other than an automobile that she disclosed on or about June 31, 2002, and an automobile that she disclosed on or about October 7, 2002. Id.

    3. On the basis of her representations regarding her income and assets, Baez received $12,282 in income assistance and food stamps, and $17,614 in medical assistance, $8,807 of which was paid by the federal government. Robinson Decl. ¶ 6.

    4. Baez did not disclose real estate or cash assets, which were material to her eligibility for low income assistance. Robinson Decl. ¶ 7.

    5. Baez was ineligible for income assistance, food stamps, and Medicaid. Robinson Decl. ¶ 8.

    6. The income assistance that the Massachusetts Department of Transitional Assistance provided to Baez was funded by the United States through the Transitional Aid to Families with Dependent Children ("TAFDC") program for low-income households, authorized by 42 U.S.C. Subchapter IV (Grants to States for Aid and Services to Needy Families with Children and Child-Welfare Services). Robinson Decl. ¶ 3.

    7. The food stamps provided to Baez were funded by the United States through

---

[1] On two occasions, she also reported that her boyfriend, Jose Geronimo, had income from SSI, which is a federal income supplement provided to low-income disabled individuals. Id.

the Secretary of Agriculture pursuant to 7 U.S.C. §§ 2011, 2013, and 2027.  Robinson Decl. ¶ 2.

8.  The Medicaid assistance provided to Baez was funded by the United States through its program for medical assistance to low income households, pursuant to 42 U.S.C. Subchapter XIX, 42 U.S.C. § 1396.  Robinson Decl. ¶ 4.

### Baez' Public Housing Claims

9.  Baez resided in a four-bedroom apartment at the Boston Housing Authority's Franklin Field development, Ames Street, Dorchester, Massachusetts, from on or about September 21, 2001, until on or about April 2004.  Declaration of Joan Shea, Franklin Field Housing Development Boston Housing Authority (hereafter Shea Decl.) ¶¶ 1, 3, Exhibit 1 to this memorandum.

10.  Baez filed applications for public housing at the Boston Housing Authority (hereafter, BHA) on July 14, 1998, September 13, 1999, November 30, 1999, January 25, 2000, and September 28, 2001, representing that she was the head of household of, variously, from five to seven persons and that her income was either zero, $118 per week, or $180 per week, and that her boyfriend, Jose Geronimo's, income was either zero per week, $125 per week, or $200 per week.  Shea Decl. ¶ 2b-d.  Baez disclosed no assets. Id.

11.  After Baez moved into public housing she filed four certifications regarding her income and assets, on November 5, 2001, July 15, 2002, November 12, 2002, and June 5, 2003, each representing that she and her household had minimal income and

disclosing no assets. Shea Decl. 2e-f. The purpose of these certifications was for the BHA to determine whether she continued to be eligible to live in public housing and, if so, determine what part of the rent she was able to pay. Shea Decl. ¶ 2(f).

12. Based on Baez' statements regarding her income and lack of assets, the BHA charged Baez rents of $123 per month from October 1, 2001, through September 2002, $636 in October 2002, $123 per month from November 2002 through September 2003, and $229 per month from October 2003 through April 2004. Shea Decl. ¶¶ 6-9.

13. The difference between the Fair Market Value of Baez' public housing apartment and the rent that Baez paid for the apartment was $50,843.50. Shea Decl. ¶ 10. See ¶¶ 6-9 (fair market value for the different rent periods).

14. In or about January 2004, the BHA filed an eviction action against Baez based on the Authority's determination that Baez had failed to report material facts regarding her income and assets in violation of law and her lease. Shea Decl. ¶ 5.

15. Had Baez disclosed to the BHA that she owned residential and/or commercial property and/or owned, controlled or earned substantial cash assets, the BHA would have denied her application for public housing because she and her household were not "low income" and were ineligible for housing subsidy. Shea Decl. ¶ 4.

16. Franklin Field housing development is financed by the United States through the United States Department of Housing and Urban Development, pursuant to the National Housing Act. Shea Decl. ¶ 11.

**Baez' Income and Assets**

17.   On August 13, 2002, Baez was carrying $62,552 in cash while attempting to board a flight from Logan Airport to Santo Domingo, Dominican Republic.  Parties' Undisputed Facts, filed October 4, 2004, in <u>United States v. $ 62,552.00 in United States Currency</u>, Civil Action No. 03-10153 (hereafter, "Parties' Undisputed Facts) ¶¶ 2-3, attached as Exhibit 3 to this memorandum.

18.   The $62,552 in cash was seized by the United States, and Baez signed and filed a letter, October 24, 2002, stating, under oath, "I am the owner of the property" and, filed a verified claim, May 1, 2003, to the $62,552.  Parties' Undisputed Facts 3, 5.

19.   Baez maintained an account at the Fleet Bank in the name of Delia Baez d/b/a Mi Tierra Restaurant.  Parties' Undisputed Fact 7.  Baez was the only person with access to this account.  <u>Id.</u>

20.   The records of Baez' Fleet Bank account show a number of large deposits and withdrawals, February 21, 2001 to October 17, 2002.  Parties' Undisputed Facts 7-10.

21.   For example, on February 21, 2001, Baez made out a check to herself for $25,000.  Parties' Undisputed Fact 6.  On May 5, 2002, Baez deposited $16,059.51 into her Fleet account.  On that day, she withdrew $ 6,000.  Parties' Undisputed Fact 8.

22.   Baez withdrew approximately $15,242.30 from her account in August 2002.  On  August 5, 2002 Baez deposited $1,669.60 and, two days later, on August 7, made a deposit in the amount of $3,048.45.  During the course of the next few days, from August 7 to August 13, 2002, Baez withdrew, by check, over $10,000, which included a check for $8,000 on August 7 and a check for $3,500 on August 12.  In addition, on August 12,

2002, Baez wrote a check for $3,500, payable to herself, on a BankBoston account, in the name of Delia Baez d/b/a Mi Tierra Restaurant.  Parties' Undisputed Fact 9.

23. In September 2002, Baez deposited into her Fleet Account a total of $11,962.68, which included a deposit of $10,295.36 on September 10, 2002.  On October 17, 2002, Baez made a $5,000 deposit to her account.  Also on October 17, 2002, she wrote a check to herself and one to "cash," withdrawing together $13,000.  Parties' Undisputed Fact 10.

24. In June 1996, Baez bought a building located at 3383 Washington Street in Jamaica Plain.  The purchase price of the property was $230,000, of which $179,000 was a loan and the remaining $21,000 was paid by Baez in cash.  The mortgage for the property is approximately $2,600 per month.  Parties' Undisputed Fact 11.  In the summer of 2002, a licensed real estate agent, Eligia McKenna, estimated that the property was worth $900,000.  Parties' Undisputed Facts ¶ 11.

25. From the time that Baez purchased 3383 Washington Street, she has been paying various people to remodel and fix up the building.  The property generates income of around $4,000 a month.  Around the time of the seizure at Logan Airport, Baez was renting part of the building for storage of consumer goods that Baez then arranged to have shipped to the Dominican Republic.  Parties' Undisputed Fact 12.  Baez testified that of the cash seized at Logan, $19,825 was from fees paid to her for shipping a container of these items; Parties' Undisputed Facts 23; and that she had a "huge space . . . to store things" in Santo Domingo.  Since approximately 2002, she rented parking spaces outside

3383 Washington Street to a company called Geraldo's Transportation for approximately $1,600 per month and parking spaces on weekends to a Somalian congregation for an income of about $300 per month.  Parties' Undisputed Fact 12.  On July 15, 2002, Baez entered into a partnership agreement to operate Mi Tierra Restaurant on the premises of 3383 Washington St., which reflects that contributed $65,000 to start-up the business.  Parties' Undisputed Facts 13, 15.

26.  On April 30, 2004, Baez purchased real property at 93 Cummins Highway, Roslindale, Massachusetts, a multifamily residence, for $480,000.  She obtained a mortgage of $384,000 from Option One Mortgage Company, and a second mortgage of $96,000 from the same company.  Title Deed and Mortgage Liens on 93 Cummins Highway, Exhibit 4 to this memorandum.

28.  Baez testified that $10,000 of the money seized at Logan Airport was to be used for a downpayment on a house in Santa Domingo.  Parties' Undisputed Fact19.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


/s/ Anita Johnson
ANITA JOHNSON
Assistant U.S. Attorney
John Joseph Moakley United States Courthouse
1 Courthouse Way - Suite 9200
Boston, MA   02210
(617) 748-3282

Certificate of Service

  I hereby certify that this document filed through the ECF system will be sent electronically and by first class mail to the registered participates as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 17, 2006.

                /s/ Anita Johnson